UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES                          DOCKET NO. 10-615(NGG)

V.

TYHE WALKER

## MEMORANDUM OF LAW IN SUPPORT OF
## TYHE WALKER'S SENTENCING

DONNA R. NEWMAN, ESQ.
ATTORNEY FOR DEFENDANT
TYHE WALKER
111 BROADWAY, SUITE 1805
NEW YORK, NEW YORK 10006
(O)   (212) 229-1516
(Fax) (212) 676-7497
donnanewmanlaw@aol.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES                         DOCKET NO. 10-615(NGG)

V.

TYHE WALKER

---

## MEMORANDUM OF LAW IN SUPPORT OF
## TYHE WALKER'S SENTENCING

---

PRELIMINARY STATEMENT

Tyhe Walker comes before Your Honor for sentencing upon his plea of guilty,

pursuant to a plea agreement, to conspiring to distribute 50 grams of crack cocaine

from 2006 through 2010 in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B)(iii)[1]. The

plea agreement provides for an advisory Federal Sentencing Guideline ("Guidelines")

sentencing range of 51 to 63 months. Plea Agreement at 2. Probation, however, based

on two minor drug convictions for which in total Mr. Walker served eight months,

concluded Mr. Walker's criminal history resulted in his being a career offender.

Accordingly, under Probation's calculations, Mr. Walker's advisory Guidelines

---

[1]His plea was to a lesser included offense within Count One of the
Superseding Indictment which charged a violation of 21 U.S.C. § 841(b)(1)(A).

sentencing range is 188 to 235 months. Presentence Report ("PSR")¶ 80.

Mr. Walker is 30 years old, a long time substance addict, who sold drugs to support his own habit. His drug and alcohol addictions stem from his pre-teens and have controlled his life for as far as he can remember. His current incarceration has enabled him to be free of these demons. Now with a clear head, he has come to terms with his addictions, his physical and emotional dependency, his mental health issues, all of which he surmises stem from his difficult upbringing and his familial predisposition[2]. As he has stated to your Honor any number of times, he is eager to get into a substance abuse rehabilitation program. Based on these circumstances, a sentence no greater than sixty months is "sufficient but not greater than necessary" to comply with the goals of sentencing. *See* 18 U.S.C. § 3553(a).

## BACKGROUND

Mr. Walker's childhood was difficult. He was conceived out-of-wedlock. His father was non-existent. His mother communicated this to Tyhe as rejection, leading him to believe he was somehow responsible for his father's absence. *See* PSR ¶ 47. His mother did not function well in her material role, at least as to Tyhe. Putting food on the table was an issue. She had her own drug addiction to cope with. She

---

[2] Mr. Walker is currently under psychiatric care at the Metropolitan Detention Center. *See* Addendum to PSR.

2

frequently left home, leaving Tyhe to fend for himself. When she was at home, her live-in abusive boyfriend Mark Peterson[3] was likewise present. Mr. Peterson not only physically abused Tyhe's mother but he also whipped Tyhe and his brother Shondell with an extension cord-leaving bruises and welts on their legs. PSR ¶ 47,51. Burdened with her own problems, Tyhe's mother had little to no patience for her inquisitive, sickly, sensitive, needy child. She alternated between rejecting him, ignoring him, and raging at him.

When Tyhe was thirteen he witnessed the shooting of his childhood friend by the police. PSR ¶ 58. This event pushed him over the edge. Nothing in his world made sense. He had no one to trust; no one to comfort him; no one understood him; no one cared about him. He felt very much alone and confused. The psychological counseling he received as a result of this incident failed to provide him with the tools he needed to cope with this traumatic experience. PSR ¶ 58; *see* PSR ¶ 59.

His relationship with his mother was far from perfect. Problems at home escalated and escalated until there came a point when he was fourteen that he no longer could emotionally withstand his home environment. PSR ¶¶ 51,53. When he left home, he could not really fend for himself. He was forced to survive on the

---

[3] The PSR in error states that Mr. Peterson is Thye's biological father. He is not. *See*, PSR ¶ 51.

charity of others.  But he soon turned to the street, to  drugs, and to alcohol to ease his pain.

Mr. Walker began using drugs at the age of 9. By 14 he was addicted to marijuana and was an alcoholic. Even his hospitalization due to a severe reaction to a joint sprinkled with angel dust did not deter Mr. Walker from using drugs and alcohol.  Substance abuse by then was a way of life. It was the only way he knew how to live.  His substance use consumed his life. He could not maintain employment. He lived in a shelter and on food stamps. He lived from hand out to hand out. When he did not have drugs he would have violent shakes.

At the time of his arrest his substance abuse was excessive by any standard. He consumed on a daily basis large quantities of alcohol, 5-6 ecstacy pills and smoked cocaine. PSR ¶¶ 61-65. He looked like he was on death's door.  If it were not for his incarceration, he surely would now be dead. PSR ¶¶64-65.

PLEA AGREEMENT

The plea agreement provides for an adjusted offense level of  23(base offense 26[50 grams of crack cocaine] minus 3 for acceptance of responsibility), a  Criminal History Category of II[4], and a Guidelines sentencing range of  51 to 63 months. Plea

---

[4]This calculation failed to account for Mr. Walker's Y.O. conviction. Inclusion of that conviction in his criminal history score results in an additional 2 criminal history points and a criminal history score of 4. Thus, his CHC is III and

Agreement pg. 2-3.  The plea agreement does not preclude Mr. Walker from seeking a Guidelines downward departure and a variance from the advisory projected Guidelines range.  The agreement does contain an appellate waiver which precludes Mr. Walker from appealing or otherwise challenging a sentence of  71 months or lower. *Id*. 3.

GUIDELINE CALCULATIONS

The PSR characterizes Mr. Walker as a street-level dealer and holds him responsible for the distribution of 50 grams of crack cocaine. PSR ¶11.  Probation concurs with the plea agreement that Mr. Walker's base offense level is 26. PSR ¶ 26.  Probation also agreed that a 3 level reduction for acceptance of responsibility is warranted. *See* PSR ¶ 32.

Mr. Walker  has two prior minor drug convictions. *Thirteen years ago*, when Mr. Walker was just 17, he was arrested for the criminal sale of crack in the 3d degree. *See* PSR ¶ 35.  A 3d Degree Criminal Sale under New York's Penal Law is chargeable for the sale of even a small quantity of crack. *See* N.Y.Penal Law § 220.39( McKinney's 2011).  For this offense Mr. Walker was adjudicated a Youthful Offender ("Y.O.") and received a sentence of one day custody and five years probation. PSR ¶ 35.  Three years later, *ten years ago*, Mr. Walker was arrested  for

his advisory Guidelines range is 57 to 71 months. *See* Discussion *supra*.

5

a criminal sale of a very small quantity of crack to an undercover officer. PSR ¶ 37.

He entered a plea of guilty to criminal sale of crack cocaine in the 5th degree, a D

felony. *Id*. As a result of this arrest, Mr. Walker's five year probation term on the

Y.O. offense was revoked. PSR ¶ 35. On July 10, 2002,the same judge sentenced Mr.

Walker for both his Y.O. probation violation and his 5th degree criminal sale offense.

He was sentenced to concurrent one year term on both offenses. PSR ¶¶ 35 & 37.

Accordingly, Mr. Walker in total for these two offenses received a sentence of one

year and one day.

Probation calculated Mr. Walker's criminal history score as 4 allocating 2

points for each drug offense. *See* PSR ¶ 45. However, based on these two drug

convictions, Probation concluded Mr. Walker was to be sentenced under the Career

Offender Guideline, Guideline 4B1.1(b). *See* PSR ¶ 45. By application of that

guideline, Mr. Walker's offense level is increased to 31 from 23 and his criminal

history category is racheted up from Criminal History Category III to VI.  PSR ¶¶33,

45. The result is a change of his Guidelines range from 57-71 to 188-235.  PSR ¶80.

## MR. WALKER SHOULD BE SENTENCED TO NO MORE THAN THE STATUTORY MINIMUM SENTENCE OF 60 MONTHS.

BACKGROUND LAW

In determining a sentence, the sentencing court is directed to "impose a sentence sufficient, but not greater than necessary , to comply with . . .the need for the sentence to: (A) reflect the seriousness of the offense, promote  respect for the law and provide just punishment for the offense, (B) afford adequate deterrence to criminal conduct; ( C) protect the public from further crimes of the defendant; and (D) provide the defendant with needed education or vocational training, medical care. 18 U.S.C. § 3553(a)(2). In determining the appropriate sentence, in light of the aforementioned, courts are directed to consider the advisory Sentencing Guidelines and its policy statements, the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a); *United States v. Cavera*, 550 F.3d 180, 189-190 (2d Cir. 2008); *United States v. Crosby*, 397 F.3d 103, 111-12 (2d Cir. 2005).

The sentencing court in determining the sentence to be imposed must consider

all the factors set forth in 18 U.S.C. § 3553(a). *Ibid.* Post-*Booker*, the Federal Sentencing Guidelines, although the starting point in the court's sentencing analysis, are just one of the many factors § 3553(a) which the court must consider. *Cavera*, 550 F.3d at 189- 191. (A district court should begin "sentencing proceedings by calculating the applicable guideline range" but the district court may not presume that the Guideline range is reasonable.). While the Guidelines must be considered by the Court, it is not an abuse of discretion for a court to vary from the Guidelines sentence based on solely policy consideration or because a specific guideline fails to reflect § 3553(a) considerations, or fails to incorporate defendant characteristics or is not based on empirical evidence or is not based on national experience. *See Gall v. United States*, 552 U.S. 38, 46 & n. 2 (2007); *Kimbrough v. United States*, 552 U.S. 85, 96 (2007); *Nelson v. United States*, 129 S.Ct. 890 (2009). The court may not presume that the Guidelines sentence is reasonable, but "must instead conduct its own independent review of he sentencing factors, aided by the arguments of the prosecution and the defense." *Cavera*, 550 F.3d at 189. The Second Circuit has also recognized that "[r]arely, if ever do the pertinent facts dictate one and only one appropriate sentence but rather experienced district judges may reasonably differ." *United States v. Jones*, 531 F. 3d .163, 173 (2d Cir. 2008).

8

a.  Application Of The Career Offender Guideline Overstates Mr. Walker's Criminal History and Propensity To Commit Other Crimes

1. Authority For Downward Departure Under 4A1.3 (b)

The Commission has provided for a departure to mitigate the harshness of the Career Offender Guideline in circumstances like those that exist here. *See* USSC § 4A1.3 (b). Specifically the Commission authorizes departure "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes a downward departure is warranted." *Id*. comment.n.3. The Second Circuit echoing the Commission's commentary  indicated a departure under §4A1.3 "is most frequently used when a series of minor offenses, results in a [criminal history category] that overstates the seriousness of the defendant's prior record." *United States v. Carrasco*, 313 F.3d 750, 757 (2d Cir. 2002). A departure is limited to a horizontal departure of one criminal history category. *See* U.S.C. § 4A1.3(b)(3). The Second Circuit, however, has authorized vertical departures under § 5K2.0 *to the extent the court deems appropriate* where the sentence called for by the Guidelines over-represents the seriousness of the defendant's prior criminal history. *United States v. Rivers*, 50 F.3d 1126, 1131 (2d Cir. 1995)(indicating that where a defendant's offense level is raised by his criminal history into career offender

9

status," the [court] may exercise its discretion "to the extent thought appropriate, to reduce either the criminal history category or the offense level, or both"); *see also United States v. Mishoe*, 241 F.3d 214, 220 (2d Cir. 2001). In determining whether a departure is warranted the district court should consider "the amount of drugs involved in [the defendant's] prior offenses, his role in those offenses, the sentences previously imposed, and the amount of time previously served compared to the sentencing range called for by placement in [criminal history category] VI." *Id. at* 219.

### 2. Authority To Sentence Outside Career Offender Guideline

Beyond departure, the Court has the authority to sentence Mr. Walker outside the Career Offender Guidelines based on policy considerations or because the Guideline is flawed or is flawed as applied to Mr. Walker. *See, Kimbrough,* 552 U.S. at 96; *Gall*, 552 U.S. at 46 & n.2; *see also United States v. Sanchez*, 517 F.3d 651, 664-65 (2d Cir. 2008)(Holding the Court is free to sentence a career offender outside the career guideline).

In enacting the Sentencing Reform Act, which was part of the Comprehensive Crime Control Act of 1984, Congress instructed the Commission to develop the Guidelines to meet all the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2). 28 U.S.C. §§ 994(a)-(f), 994(o), 994(p). To insure the Guidelines would meet these

purposes of sentencing, the Commission was instructed to examine past sentencing practices, gather, examine, and investigate data to determine the empirical evidence of the relationship of sentences to the purposes of sentencing, and then to review the Guidelines periodically to revise the guidelines to ensure they had met the goals of sentencing. 28 U.S.C. §944(m),944(o); 955(a)(12)-(16).  Congress at the same time instructed the Commission to establish a guideline which would specify a sentence for violent repeat offenders at or near the top of the statutory maximum. *See* 28 U.S.C. § 994(h).

However, in promulgating the Career Offender Guideline, the Commission, considered only the latter directive, i.e. it keyed the guideline only to statutory maximums without factoring in whether in every case that was appropriate after its review of past practices or empirical data. It overlooked that Congress' intent  was to only "incapacitat[e] the *tiny minority of criminals* responsible for the overwhelming majority of violent crimes." *United States v. Chartier*, 970 F.2d 1009 (2d Cir. 1992). Rather, it formulated a guideline based only on a mathematical calculus which is over inclusive.  It sweep in offenders like Mr. Walker, non-violent offenders, whose criminal history includes only minor drug offenses, remote in time to the present offense and committed when the offender was an adolescent. The Commission failed to factor into the guideline the other 3553(a) factors such as an

individual characteristics, the offenders background, his age currently or his age at the time of the prior offense, the seriousness of the prior offenses or even the remoteness of the prior offense, etc. In short, the Guideline does not take into account the myriad of factors which are required to be considered by § 3553(a) and which Congress intended the Commission to consider in promulgating even the Career Offender Guideline.

The Commission has recognized the flaws in the application of career offender guidelines to offenders such as Walker. As early as 1988 the Commission recognized that the career offender guideline unfairly fails to distinguish "between defendants convicted of the same offenses, either as to the seriousness of their instant offense or their previous conviction...even if one defendant was a drug 'kingpin' with serious prior offenses, while the other defendant was a low-level street dealer." U.S. Sentencing Commission, *Career Offender Guidelines Working Group Memorandum* at 13 (March 25, 1988); *see also* U.S. Sentencing Commission, *Criminal History Working Group Report* at 29-30 (Oct. 17, 1991)*;* U.S. Sentencing Commission, *Report of the Drugs/Role Harmonization Working Group* at 2-3 (Nov. 10, 1992). The Commission also concluded after its review of the data and statistics concerning sentences imposed before the Sentencing Reform Act that Black offenders comprised 58% of offender sentenced under the career offender guideline. U.S. Sentencing

12

Commission, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System Is Achieving the Goals of Sentcing Reform,* at 134(Nov. 2004). They also determined that incapacitating low level drug dealers has little to no effect on crime prevention, since they are usually replaced by others who can fulfill the need for drug demand. *Id.* The Commission's empirical data revealed that career offenders based on prior drug offense "more closely resembles the rates for offenders in lower criminal history categories in which they *would be* placed under the normal criminal history scoring rules." *Ibid.* (emphasis in original).

### 3. Departure and Variance To Statutory Minimum Is Warranted

The application of the Career Offender Guidelines here is a prime example of the Guidelines' insanity. *See United States v. Preacely*, 628 F.3d 72, 84 (2d Cir. 2010)(Lynch, J, concurring). There could not be a clearer case for a departure and a variance. Walker's criminal history score of four points, is predicated on a probation violation and a small crack sale to an undercover officer, both over ten years ago(and the underlying offense for the violation was thirteen years ago.). Yet, because of these two relatively minor offenses, Mr. Walker, a street seller of small quantities of crack in this offense-is subjected to a term of imprisonment 188 to 235 months-close to twenty years!! Notably, without the application of the Career Offender Guideline, Mr. Walker, with a total offense level of 23 and a CHC III would be subjected to a term

13

of 57 to 71 months[5]. Thus, although Walker's two prior offenses were relatively minor-the longest sentence imposed was a year -he is punished the same as offenders whose criminal history includes lengthy prison terms and treated the same as offenders who committed violent crimes. Similarly, Walker is being punished the same as offenders who had repeated revocations with short time span between offenses.

Unlike the robotic Career Offender Guideline, this Court can and must consider in determining the appropriate sentence Walker's background , the background of his offense conduct, and his character. *See* 18 U.S.C. § 3553(a). Those considerations warrant a sentence outside the career offender guideline sentence by means of a departure and a variance. Walker's involvement in crime is all related to his addiction, an addiction which began at a very early age. He has a familiar history of drug abuse, his up-bringing lacked guidance and any basic of family life. He suffered both physical and emotional abuse. He was traumatized by seeing his friend shot by the police. He has a long history of mental illness which likewise contributes to his drug use. *See* PSR ¶¶58-59.  His prior convictions do not involve violence, nor does

---

[5]Even that sentence seems harsh for the amount of crack he actually sold as opposed to the quantity he obtained for personal use.  That sentence is likewise harsh in light of the disparate ratio between crack and cocaine. *See* Discussion supra.

14

this offense involve violence.

The Court should also consider that here one of Walker's predicate offenses was adjudicated as a YO indicating the sentencing court did not consider the offense especially serious. It is obvious that "'[j]uveniles have an underdeveloped sense of responsibility, are more vulnerable to negative influences and peer pressure, and their character is not as well formed as an adult's." *Roper v. Simmons*, 543 U.S. 551, 569-70 (2005)(citations omitted).

The aim of the Career Offender Guideline is deterrence and concerns regarding recidivism. *See Mishoe*, 241 F.3d 220. Any term of imprisonment beyond Mr. Walker's prior imprisonment which totaled one year and a day "will achieve the deterrent effect underlying the career offender designation." *See United States v. Rivera*, 2006 U.S. Dist. Lexis 87840, 04CR959-01(SWS) (SDNY Nov. 29, 2006)(citations omitted); *see also United States v. Carvajal*, 2005 U.S.Dist. LEXIS 3076, 2005 WL 476125, at *5 (S.D.N.Y. Feb. 22, 2005)(concluding the Career Offender Guidelines are excessive as applied to Carvajal, in part, in consideration of his prior criminal history). He has a strong desire for treatment which indicates that personal deterrence is not warranted. A lengthy sentence serves no appreciable benefit to society. It is treatment he needs, not further punishment.

Courts have not hesitated to give below guideline sentences, including

15

sentences which combine departure and variance, in circumstances similar to those present here. *See e.g. United States v. Hodges*, 2009 WL 366231 * 7-8 (E.D.N.Y. 2009)(Court granted variance because defendant was a drug addict, who suffered from multiple addictions throughout his life, his criminal convictions "stem from his drug-related activity and he has no convictions for violence); *United States v. Moreland,* 904652 WL**10-13 (S.D.W. Va. Apr. 3, 2008)( Defendant was from a broken home, the offense of conviction involved no violence and small quantity of drugs, prior offense were minor drug trafficking offense, a lengthy sentence would interfere with efforts toward rehabilitation); *United States v. Serrano*, 2005 WL 1214314 (S.D.N.Y. May 19, 2005)(Defendant was a drug addict, his prior drug offenses stemmed from his addiction, his prior offenses were remote and time previously spent in prison was one year).

In sum, the Career Offenders Guidelines' is over-inclusive based on a myopic mathematical approach which in particular as applied to Mr. Walker frustrates rather than achieves the sentencing goals of 18 § 3553(a). Also, as discussed above, there exists justifiable policy reasons to find the Career Guideline is flawed. The Honorable Gerald Lynch recently observed with respect to the Career Offender Guideline that "[t]here is a significant debate about the desirability of this sort of "three-strikes" sentencing, which dramatically escalates a sentence that is not only already severe,

but that has in fact already been substantially increased by reason of Preaceley's criminal record." *Preaceley*, 628 F.3d at 84 (Lynch, J., concurring).

Application of the Career Offender Guideline to Mr. Walker results in a sentence that is far greater than necessary to achieve the stated objectives of sentencing. *See* 18 U.S.C. § 3553(a). Therefore, it is not an abuse of discretion for this Court to conclude that sentencing Walker to a sentence in accord with the career offender guideline yields a sentence ''greater than necessary'' to achieve § 3553(a)'s purposes and to sentence him to a term of 60 months. *See, Kimbrough,* 552 U.S. at 96; *Gall*, 552 U.S. at 46 & n.2.

   b. Other § 3553(a) Consideration Compell A Sentence No Greater Than 60 Months.

      1. Cocaine To Crack Disparate Ratio

Although Mr. Walker is being sentenced under the November 2011 edition of the United States Guidelines and thus, the newly amended crack guideline is being applied, nonetheless, even under that crack guideline there remains a disparity in the cocaine to crack ratio. Notably, for the same amount of cocaine, Mr. Walker's base offense level would be 16. *See* U.S.S.G. § 2D1.1(12). This disparate ratio lacks support in empirical research and unfairly impacts on minorities. There can not seriously be debated that any disparity between the two forms of cocain is just plain

17

wrong, unfair and should not be tolerated. *See* Fair Sentencing Act of 2010, Publ.L.No. 111-220, 124 Stat. 2372 (Aug. 3, 2010); *Kimbrough,* 552 U.S. 85 (2007). Fortunately, it is not an abuse of discretion for this  Court to conclude that a one to one crack to cocaine ratio should apply and sentence Mr. Walker accordingly. *See Kimbrough v. United States*, 552 U.S. 85. This provides an additional basis for the Court to grant Mr. Walker a non-guideline sentence.

> 2. Mr. Walker's Drug Addiction, His Mental Health Issues, and His Familial Background

> The Court should consider, not only in terms of departure and variance from Mr. Walker's Career Offender Guideline, but also in terms of a straight variance, Mr. Walker's background.  Mr. Walker would be the first not to excuse his criminal conduct.  The reality is, however, his abusive up-bringing, his mother's drug addiction, the absence of a father, all propelled his substance abuse. It was his addiction which lead to his involvement in the instant offense. Mr. Walker needs treatment which he is now ready to accept. He needs job training. He needs someone to acknowledge confidence in his ability so he can achieve the normal productive life he so longs for. A sentence by this Court of no greater than 60 months will be a nod to Mr. Walker that the Court believes he can be a productive member of society.

<u>CONCLUSION</u>

For the reasons stated, a sentence of 60 months is "sufficient but not greater"

than necessary to achieve the goals of sentencing.

Respectfully submitted,

/s/

Donna R. Newman
cc:     AUSA Carter Burwell, Esq.via email and ECF
        Tyhe Walker via first class mail

19